UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

OLUWAFEMI BABAYEMI, JOSEPH ADENIYI,       )
DAMLIARE EHINOLA, ABIOLA OLADEJI KOSILE,   )
SAMANTHA JOHNSON, OLUWAFEMI ADELANWA,    )
and ABAYOMI FALAYE,                        )
                                           )
                    *Plaintiffs*,          )
                                           )        No. 1:23-cv-00353-JMS-TAB
           v.                              )
                                           )
NOW COURIER, INC.,                         )
                                           )
                    *Defendant*.           )

## ORDER

Plaintiffs Oluwafemi Babayemi, Joseph Adeniyi, Damliare Ehinola, Abiola Oladeji Kosile,

Samantha Johnson, Oluwafemi Adelanwa, and Abayomi Falaye are all current or former delivery

drivers for Defendant NOW Courier, Inc. ("NOW").  In this lawsuit, they challenge NOW's

classification of them as independent contractors instead of employees and assert class and

collective action claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA")

and Indiana wage and hour laws.  Plaintiffs have filed a Motion for Conditional Certification and

to Authorize Notice Under the FLSA, [Filing No. 37], which is ripe for the Court's consideration.

**I.**
**RELEVANT BACKGROUND**[1]

**A.      NOW's Business**

NOW contracts with a variety of clients, including large pharmacies and other medical

companies, to deliver pharmaceuticals or other products to nursing homes, hospitals, and

---

[1] These background facts are taken primarily from evidence presented by Plaintiffs, which the
Court accepts as true only for purposes of the Motion for Conditional Certification.

healthcare facilities.  [*See* Filing No. 18 at 4; Filing No. 39-1 at 3.]  NOW conducts deliveries "across Indiana, including Cincinnati and Louisville." [https://www.nowcourier.com (last visited Nov. 27, 2023).]  It has several branch locations in Indiana, including in Indianapolis, South Bend, Fort Wayne, Merrillville, and Evansville.  [https://www.nowcourier.com; *see also* Filing No. 39-1 at 3.]

NOW requires its drivers to meet NOW's "minimum driver qualification standards," to "provide…professional driving services, other incidental transportation related services, and the use of equipment" and to "submit to both a criminal background check and driver history report" before beginning their position and annually thereafter.  [Filing No. 37-5 at 2-4.][2]  NOW controls many aspects of its drivers' work – for example, drivers must provide NOW "with minimum (24) hours prior notice of periods when [drivers] will be unavailable to provide services" and "[d]uring periods of availability [driver] agrees to be logged-on to [NOW's] designated electronic dispatch system." [Filing No. 37-5 at 2 (emphasis omitted).]  Drivers also must be "immediately identifiable as providing services pursuant to [NOW's] authority" by wearing a black or royal blue polo shirt and dark or khaki pants or cargo shorts with an identification badge bearing NOW's logo.  [Filing No. 37-5 at 8.]  NOW also requires its drivers to consent to drug and alcohol testing.  [Filing No. 37-5 at 27.]  Drivers must also submit "all delivery documents" to NOW within 48 hours or a time

---

[2] Plaintiffs refer to exhibits by name rather than where they are located on the docket, which has made the Court's review of the Motion for Conditional Certification unnecessarily cumbersome.  Moreover, Plaintiffs do not provide citations to specific pages within exhibits.  For example, their citation for this sentence is simply "See Exemplar Independent Contractor Agreement (attached hereto as Exhibit E)."  [Filing No. 37 at 11.]  Exhibit E is 36 pages, and Plaintiffs' general citation to the entire document is unhelpful.  Plaintiffs are cautioned to provide page citations in any future filings and to cite to documents by their placement on the docket, as the Court does throughout this Order.  This procedure is set forth in the Court's Practices and Procedures in connection with the filing of Motions for Summary Judgment.  [*See* Filing No. 6 at 17-18.]

period required by the customer.  [Filing No. 37-5 at 4-5.]  Drivers are "liable for the full amount of [NOW's] damages" for any lost packages.  [Filing No. 37-5 at 7 (emphasis omitted).]

All drivers sign a similar Independent Contractor Agreement (the "Agreement") when they begin working for NOW.  [Filing No. 37-6 at 2; Filing No. 37-7 at 2; Filing No. 37-8 at 2; Filing No. 37-9 at 2; Filing No. 37-10 at 2.]  Drivers are typically required to use their own vehicles to pick up pharmaceuticals from a central location designated by NOW and deliver the pharmaceuticals on an assigned delivery route to NOW's customers, which include nursing homes and long-term care facilities.  [Filing No. 37-6 at 2-3; Filing No. 37-7 at 3; Filing No. 37-8 at 2-3; Filing No. 37-9 at 2-3; Filing No. 37-10 at 2-3.]  Additionally, NOW pays delivery drivers directly and deducts various administrative fees and charges from their pay.  [Filing No. 37-5 at 3.]  Drivers are not reimbursed for gasoline or any vehicle-related expenses, and do not receive an overtime premium for hours worked in excess of 40 per week.  [Filing No. 37-6 at 3; Filing No. 37-7 at 4; Filing No. 37-8 at 3-4; Filing No. 37-9 at 3; Filing No. 37-10 at 3.]

NOW exercises common control over drivers' work, including that all delivery drivers: work out of hub pharmacies where they must pick up pharmaceutical products to deliver to NOW's customers in the same or a similar manner; must ensure confirmation of deliveries in real-time using a cell phone application and are instructed to have nurses and residents electronically sign as they make deliveries; and must comply with certain recordkeeping policies and return any returned or undelivered products to the hub pharmacies – without being compensated for doing so – after completing their deliveries.  [Filing No. 37-6 at 3; Filing No. 37-7 at 3-4; Filing No. 37-8 at 3; Filing No. 37-9 at 3; Filing No. 37-10 at 3.]  NOW assigns each driver a particular route for each workday or an urgent "stat" run for miscellaneous delivery assignments that are high priority.  [Filing No. 37-6 at 3; Filing No. 37-7 at 3; Filing No. 37-8 at 3; Filing No. 37-9 at 3; Filing No.

37-10 at 3.]  Supervisors and dispatchers monitor and assign deliveries to NOW drivers over the phone or in person.  [Filing No. 37-6 at 3; Filing No. 37-7 at 3; Filing No. 37-8 at 3; Filing No. 37-9 at 3; Filing No. 37-10 at 3.]

Delivery drivers performing on-demand or "stat" work for NOW are paid based on a percentage of the revenue NOW receives for the work, but the compensation structure varies and contractors often negotiate their rates for individual deliveries.  [Filing No. 39-1 at 5.]  Delivery drivers performing routed work are compensated in different ways – some routed work is paid by the stop, while other routed work is paid by the route on a fixed basis.  [Filing No. 39-1 at 5.]  The method of compensation for routed work is also different at different NOW facilities.  [Filing No. 39-1 at 5.]  NOW delivery drivers do not clock in and out each day, are free to perform work when it is convenient for them consistent with the time parameters associated with the services they have agreed to perform, and NOW does not monitor or actively record the hours delivery drivers spend performing their services.  [Filing No. 39-1 at 5.]

### B.  Plaintiffs' Experiences At NOW

#### 1.  Oluwafemi Babayemi

Mr. Babayemi worked as a delivery driver for NOW from approximately January 2015 to August 2018, and then again from August 2019 to April 2021.  [Filing No. 37-7 at 2.]  During that time, he made deliveries for NOW's clients Omnicare, AlixaRx, and Vanguard.  [Filing No. 37-7 at 2.]  He would usually work about 70 hours per week, for six days a week, and was never paid for overtime work.  [Filing No. 37-7 at 4.]

Mr. Babayemi would generally drive more than 90 miles a day, using his personal vehicle and paying for his own gas and insurance.  [Filing No. 37-7 at 4.]  He was paid about $1,100 per

week (before deductions) for driving about 500 miles a week.  [Filing No. 37-7 at 4.]  NOW would

deduct fees from his paycheck.  [Filing No. 37-7 at 4.]

      2.    *Samantha Johnson*

Samantha Johnson worked as a delivery driver for NOW, making deliveries to one of its

clients, Omnicare, from approximately March 2019 to February 2020.  [Filing No. 37-6 at 2.]  Ms.

Johnson usually worked 60 hours per week, five to six days a week.  [Filing No. 37-6 at 3.]  She

was never paid overtime premiums for any work in excess of 40 hours per week.  [Filing No. 37-

6 at 3.]

Although there was some fluctuation, Ms. Johnson would often drive more than 400 miles

a day performing her deliveries for NOW.  [Filing No. 37-6 at 3.]  She paid for her own gas and

insurance while using her personal vehicle for deliveries.  [Filing No. 37-6 at 3.]  NOW paid Ms.

Johnson approximately $500 per week for driving approximately 2,400 miles a week.  [Filing No.

37-6.]  NOW also deducted fees from her paycheck.  [Filing No. 37-6 at 3.]

      3.    *Oluwafemi Adelanwa*

Mr. Adelanwa worked as a delivery driver for NOW from approximately March 2017 to

sometime in 2020, making deliveries for Omnicare and other NOW clients.  [Filing No. 37-8 at

2.]  He would work 10 to 12 hours a day, seven days a week, but was never paid overtime.  [Filing

No. 37-8 at 3.]

Mr. Adelanwa would often drive hundreds of miles per day – sometimes more than 500

miles – using his personal vehicle and paying for his own gas and insurance.  [Filing No. 37-8 at

4.]  NOW paid him about $1200 per week (before deductions) and would take fees out of his

paycheck as well.  [Filing No. 37-8 at 4.]

### 4. Abiola Oladeji Kosile

Mr. Kosile worked as a delivery driver for NOW, making deliveries for Omnicare, from approximately 2014 to 2020 or 2021.  [Filing No. 37-9 at 2.]  He worked about 60 hours a week, five days a week, and was not paid overtime premiums for any hours worked over 40 hours per week.  [Filing No. 37-9 at 3.]

Mr. Kosile would often drive more than 1,000 miles per week – sometimes up to 2,000 miles per week.  [Filing No. 37-9 at 3.]  He used his personal vehicle and paid for his own gas and insurance.  [Filing No. 37-9 at 3.]  NOW paid him approximately $1,000 per week on average, based on a pay rate of 63 cents per mile, but he was not paid for "the complete round trip associated with [his] delivery work for NOW."  [Filing No. 37-9 at 4.]  NOW would also take fees out of his paychecks.  [Filing No. 37-9 at 4.]

### 5. Damliare Ehinola

Mr. Ehinola worked for NOW as a delivery driver from approximately Fall 2017 to December 2021, making deliveries for Omnicare.  [Filing No. 37-10 at 2.]  He worked approximately 70 hours per week, five to six days per week, and was never paid overtime premiums for hours worked over 40 hours per week.  [Filing No. 37-10 at 3.]

Mr. Ehinola would often drive more than 250 miles per day and used his personal vehicle and paid for gas and insurance.  [Filing No. 37-10 at 3.]  He was paid approximately $850 per

week for driving between 1,300 and 1,500 miles.  [Filing No. 37-10 at 3.]  NOW would deduct various fees out of his paycheck as well.  [Filing No. 37-10 at 3.][3]

### C.    This Lawsuit

Plaintiffs initiated this lawsuit on February 28, 2023, [Filing No. 1], and filed the operative Amended Complaint on April 18, 2023, [Filing No. 18.]  They bring individual and collective action claims for violation of the FLSA for failure to pay minimum wages and failure to pay overtime wages, and individual and class claims for violation of Indiana wage and hour laws for failure to pay minimum and overtime wages, and underpayment of wages.[4]  [Filing No. 18 at 9-13.]

On August 11, 2023, Plaintiffs filed a Motion for Conditional Certification and to Authorize Notice Under the FLSA, asking the Court to certify the following FLSA collective action:

> All individuals who worked for [NOW] in Indiana, were classified as independent contractors, and delivered pharmaceutical products at any point during the past three years.

---

[3] Plaintiffs did not submit Declarations from Joseph Adeniyi or Abayomi Falaye in support of their Motion for Conditional Certification, but allege in their Amended Complaint that Mr. Adeniyi worked for NOW between approximately 10 and 12 hours per day, five days a week, from September 2015 to March 2020, and that Mr. Falaye worked for NOW approximately 10 hours per day, five days a week, from August 2019 to July 2021.  [Filing No. 18 at 2; Filing No. 18 at 4; Filing No. 18 at 7.]

[4] Plaintiffs also asserted a claim for unlawful deductions under the Indiana Wage Deduction Statute, but subsequently voluntarily dismissed that claim.  [Filing No. 25.]

[Filing No. 37 at 9.][5]   NOW has filed a Response in Opposition to Plaintiffs' Motion for Conditional Certification and to Authorize Notice Under the FLSA, [Filing No. 39], and Plaintiffs have filed a Reply, [Filing No. 40].

## II.
### PROPRIETY OF CONDITIONAL CERTIFICATION

**A.    Standard of Review**

The FLSA provides that an action for unpaid minimum wages or unpaid overtime compensation may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).   A collective action differs significantly from a class action brought pursuant to Federal Rule of Civil Procedure 23. The primary difference is that plaintiffs who wish to be included in a collective action must affirmatively opt in by filing a written consent with the Court, while members of a Rule 23 action are automatically included unless they affirmatively opt out. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010).   Accordingly, Rule 23 and its standards governing class certification do not apply to a collective action brought under the FLSA.

An employee may only bring a collective action on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b).   Therefore, to decide whether to initially certify a collective action, the Court must determine whether members of the proposed class are, in fact, similarly situated. *Campbell v. Advantage Sales & Mktg., LLC*, 2010 WL 3326752, at *3-4 (S.D.

---

[5] In their Amended Complaint, Plaintiffs allege their collective action claims on behalf of "all similarly situated individuals in the United States (excluding states in which there is already an action pending asserting these same wage claims)." [Filing No. 18 at 8.]   Through their Motion for Conditional Certification, they now limit their collective action claims to individuals who worked for NOW in Indiana during the past three years. [Filing No. 37 at 9.]

Ind. 2010).  Courts within this Circuit typically use a two-step inquiry.  *Duan v. MX Pan Inc.*, 2023 WL 5955911, at *1 (S.D. Ind. Aug. 21, 2023).

The first step, also known as the notice stage, involves analysis of the pleadings and affidavits that have been submitted to determine whether notice should be given to potential class members.  *Campbell*, 2010 WL 3326752, at *3.  The plaintiffs "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Duan*, 2023 WL 5955911, at *1 (quotation and citation omitted).  Although the first step of certification does not impose a high burden on the plaintiff, "this does not mean that the 'modest factual showing' is a mere formality."  *Campbell*, 2010 WL 3326752, at *4.  It serves as an important and functional step in the certification process because "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated."  *Adair v. Wis. Bell, Inc.*, 2008 WL 4224360, at *4 (E.D. Wis. 2008) (quotation and citation omitted).

The second, more stringent, step of certification occurs after discovery has largely been completed and allows a defendant the opportunity to seek decertification of the class or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA.  *Duan*, 2023 WL 5955911, at *1.  Under this more stringent inquiry, courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns."  *Threatt v. CRF First Choice, Inc.*, 2006 WL 2054372, at *5 (N.D. Ind. 2006).

While the Case Management Plan in this case contemplates the filing of a motion to distribute notice of a proposed collective action under the FLSA after the completion of discovery, [*see* Filing No. 29 at 5-6 (Case Management Plan providing for a discovery deadline of January 31, 2024 and a deadline for a motion to distribute notice of a proposed collective action of February 15, 2024)], Plaintiffs opted to file their Motion for Conditional Certification before significant discovery had taken place.  The Court finds that this case is at the first, or notice, stage of certification, where Plaintiffs must show that they are "similarly situated to the other employees on whose behalf [they] seek[ ] to pursue the claim[s]." *Campbell*, 2010 WL 3326752, at *3.

**B.   Discussion**

In support of their Motion for Conditional Certification, Plaintiffs argue that they have made the modest factual showing that they and other NOW delivery drivers were the victims of a common policy, scheme, or plan that violated the FLSA.  [Filing No. 37 at 18.]  NOW argues that the evidence underlying Plaintiffs' Motion for Conditional Certification is irrelevant and lacks credibility, and that Plaintiffs are not similarly situated to the class of individuals they seek to represent.  [Filing No. 39 at 11-30.]  The Court first considers the reliability of Plaintiffs' evidence, and then addresses whether that evidence meets the burden for conditional certification.

*1.   The Reliability of Plaintiffs' Evidentiary Support*

Plaintiffs have submitted five Declarations in support of their Motion, which they contend show that they are similarly situated to putative collective action members and that they were all "victims of a common policy, scheme, or plan that violated the law."  [Filing No. 37 at 18 (quotation and citation omitted).]

NOW argues in its response that the five Declarations are unreliable.  Specifically, it argues that the five Plaintiffs who submitted Declarations focus on their work for Omnicare, but

"Omnicare ended its relationship with [NOW] in February 2019." [Filing No. 39 at 11.]  NOW asserts that the statute of limitations for Plaintiffs' FLSA claims is three years, that the claims period reaches back to February 28, 2020 (three years before Plaintiffs initiated this litigation on February 28, 2023), and that any claims based on work Plaintiffs performed for Omnicare would fall outside of the statute of limitations.  [Filing No. 39 at 9-12.]  NOW also contends that the Declarations "are filled with allegations that directly conflict with Plaintiffs' prior pleadings as well as documents already produced to Plaintiffs' counsel." [Filing No. 39 at 12.]  It notes that Ms. Johnson and Mr. Adelanwa state in their Declarations that they worked significant hours per week at NOW, but have filed documents in other cases against another delivery service, Priority Dispatch ("Priority"), indicating that they also worked over forty hours per week during the same time periods for Priority.  [Filing No. 39 at 25-26.]  NOW argues further that it could not find any record of Mr. Adeniyi ever working for NOW.  [Filing No. 39 at 11.]

Plaintiffs reply that the five Declarations contain descriptions of the declarants' work over the entire time period, not just when they performed deliveries for Omnicare.  [Filing No. 40 at 9.] They also contend that differences in the declarants' allegations in the Amended Complaint versus what they stated in their Declarations are insignificant and that "the Court does not make credibility determinations at the conditional certification stage." [Filing No. 40 at 10.]  Plaintiffs do not specifically address NOW's contentions regarding Ms. Johnson and Mr. Adelanwa claiming to have worked significant hours per week at NOW while also working significant hours at Priority, nor do they address NOW's position that Mr. Adeniyi never worked at NOW.  [*See* Filing No. 40.]

At step one of collective action certification, before discovery has been completed, "the court does not consider the merits of the named plaintiff's claims, determine credibility, or specifically consider opposing evidence presented by a defendant." *Shumate v. Genesco, Inc.,*

2018 WL 259942, at *2 (S.D. Ind. Jan. 2, 2018). However, the Court will not "stick its head in the sand" and ignore clear evidence presented by the party opposing notice. *Williams v. Angie's List, Inc.*, 2017 WL 1546319, at *3 (S.D. Ind. April 27, 2017).

Here, NOW has set forth a Declaration from its Executive Vice President, Ryan Jacobs, in which Mr. Jacobs avers that Omnicare ended its relationship with NOW in February 2019. [Filing No. 39-1 at 5.] Plaintiffs ignore NOW's argument that several of the Plaintiffs state in their Declarations that they performed deliveries for Omnicare on behalf of NOW after that date. Plaintiffs generally argue that in their Declarations they "explained the type of work that they performed for NOW and NOW's control over their work during the entire time period that they were working," [Filing No. 40 at 9 (emphasis omitted)], but Ms. Johnson, Mr. Kosile, and Mr. Ehinola only discuss the circumstances of making deliveries for Omnicare. [*See* Filing No. 37-6 at 2-3 (Ms. Johnson stating that she performed deliveries on behalf of NOW for Omnicare from March 2019 to February 2020 and describing how she had to use her own personal vehicle for "those deliveries," how she had to pick up products she "was delivering for Omnicare" from a pharmacy in South Bend, Indiana, and how she had to return to the location at the end of each day to drop off returned and undelivered products); Filing No. 37-9 at 2-3 (Mr. Kosile stating that he worked for NOW making deliveries on behalf of Omnicare from 2014 to 2020 or 2021, had to use his own vehicle to perform "these deliveries," obtained products he was "delivering for Omnicare" from a pharmacy in Indianapolis, and had to return undelivered products to the warehouse at the end of each day); Filing No. 37-10 at 2-3 (Mr. Ehinola stating that he worked for NOW making deliveries "on behalf of its client Omnicare" from Fall 2017 to December 2021, had to use his own vehicle to perform "these deliveries," obtained the products he was delivering from a warehouse in Indianapolis, and had to return undelivered products at the end of the day).] As discussed above,

12

any claims related to making deliveries for Omnicare would be time-barred because they took place before February 2020.  Accordingly, the Declarations of Ms. Johnson, Mr. Kosile, and Mr. Ehinola do not provide support for Plaintiffs' Motion for Conditional Certification because they only discuss the circumstances surrounding deliveries for Omnicare.

The Declarations of Mr. Babayemi and Mr. Adelanwa, however, relate to deliveries they provided on behalf of NOW to Omnicare and other clients.  Mr. Babayemi states that he made deliveries to Omnicare on behalf of NOW "from approximately January 2015 to August 2018, and then August 2019 to April 2021." [Filing No. 37-7 at 2.]  He then states that he "also made deliveries for AlixaRx and Vanguard for [NOW]." [Filing No. 37-7 at 2.]  While he then references "obtain[ing] the products [he] was delivering for Omnicare" from a pharmacy location in Rockville, Indiana, he also includes more general statements regarding his delivery work which plausibly could apply to work for AlixaRx or Vanguard.  [*See, e.g.*, Filing No. 37-7 at 3 ("I also performed stat deliveries, which are ad hoc, high priority deliveries that are required to be made in a specific amount of time.").]  Similarly, Mr. Adelanwa states in his Declaration that he made deliveries on behalf of NOW for Omnicare from March 2017 to 2020 and also "made deliveries for many other of [NOW's] clients as well." [Filing No. 37-8 at 2.]  He then discusses generally his delivery work for NOW.[6]  [*See* Filing No. 37-8 at 3.]

---

[6] NOW raises a separate issue with Mr. Adelanwa's Declaration – that Mr. Adelanwa filed an opt-in consent form in a case against Priority, stating that he worked more than 40 hours per week for Priority from February 2019 to 2020, in addition to the up to 84 hours per week he states he worked for NOW in his Declaration, which would total at least 17 hours for every calendar day of the year. [Filing No. 39 at 13-14.]  While this pace of work seems unlikely, the Court finds that Mr. Adelanwa's statements regarding the time periods in which he performed work simultaneously for NOW and Priority are somewhat ambiguous, and will not attempt to resolve those ambiguities at the notice stage.  The Court is concerned, however, that Plaintiffs did not address this argument in their reply brief, or attempt to rectify this potential inconsistency.  The Court cautions Plaintiffs – and counsel – that statements in Declarations are subject to penalty of perjury and false statements are subject to sanctions potentially against both the declarant and counsel.

Due to the fact that Ms. Johnson, Mr. Kosile, and Mr. Ehinola only discuss delivery work for Omnicare and that such work falls outside of the limitations period, the Court will only consider the Declarations of Mr. Babayemi and Mr. Adelanwa, and only their general statements regarding deliveries (as opposed to their statements relating specifically to deliveries for Omnicare) in determining whether Plaintiffs have met their burden of showing that they are similarly situated to the class of individuals they seek to represent.

2.    *Whether Plaintiffs Are Similarly Situated*

In support of their Motion for Conditional Certification, Plaintiffs point to the Declarations they submitted which, they argue, "converge on a common scheme or plan utilized by NOW to avoid paying its delivery drivers in accordance with the FLSA," and show that: NOW delivery drivers are classified as independent contractors; they are not paid overtime for any hours worked in excess of 40 hours per week and are not reimbursed for all work-related expenses; they are required to drive hundreds if not thousands of miles per week in their personal vehicles and to incur significant work-related expenses; they all use their personal vehicles to pick up pharmaceuticals from a central location and deliver them along an assigned route to nursing homes and health care facilities; and they are subjected to materially similar policies under the Agreement. [Filing No. 37 at 18.]  Plaintiffs point to the Agreement, which they assert all drivers must sign and "wherein NOW reserves unlimited control to require drivers to follow any rules or requirements of NOW's customers, such as Omnicare." [Filing No. 37 at 19.]  They contend that the Court can look to the Agreement to analyze NOW's control over drivers and whether they should be considered employees under the FLSA. [Filing No. 37 at 19.]  Plaintiffs point to NOW's "common misclassification practice" of classifying them as independent contractors rather than

employees, and its "uniform policy" of "failing to pay them any overtime, and failing to reimburse them for fuel and vehicle maintenance." [Filing No. 37 at 20.]

In its response, NOW asserts that if Plaintiffs had conducted discovery before filing their Motion, which they had an opportunity to do under the Court's Case Management Plan, they would have uncovered that only a portion of NOW's operations involve the delivery of pharmaceutical products; that its services vary from industry to industry and from client to client; that NOW has several branch locations in Indiana and that some Indiana-based contractors make deliveries outside of Indiana; differences in the type of services contractors provide, the manner in which they perform them, and the way they are compensated for them; that contractors are afforded significant freedom and flexibility with their work; and that they are permitted to work for other entities, including NOW's competitors. [Filing No. 39 at 15-19.] NOW also argues that Plaintiffs are not similarly situated to each other or their proposed collective action members because they cannot prove their claim that they were improperly classified as independent contractors with the same evidence. [Filing No. 39 at 28-32.] Further, NOW asserts that Plaintiffs are not similarly situated because they cannot prove their claims for overtime and minimum wages without introducing evidence from themselves and each potential opt-in plaintiff. [Filing No. 39 at 32-36.] NOW also notes that Plaintiffs' allegations are limited to only a share of NOW's facilities in Indiana. [Filing No. 39 at 37-38.] Finally, NOW contends that two individuals who have filed opt-in forms "epitomize the issues" NOW has pointed out with Plaintiffs' Motion – one has claims that are time-barred and the other only worked one day per week so cannot be entitled to overtime pay in any event. [Filing No. 39 at 38.]

In their reply, Plaintiffs argue that they all signed the same Agreement. [Filing No. 40 at 7-8.] They assert that they have made the minimal showing they must make and that NOW applies

the stricter certification standard for cases in which significant discovery has taken place.  [Filing No. 40 at 11-12.]  Plaintiffs also argue that the fact that one driver was paid per delivery and another was paid a set amount for an entire delivery route is irrelevant, and that the fact that employees will need to show how many hours they worked in order to determine whether they are entitled to overtime does not prevent certification.  [Filing No. 40 at 16.]

The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion to authorize notice to potential plaintiffs.  *Raymer v. Mollenhauer*, 2010 WL 3259346, at *1 (N.D. Ind. 2010).  Courts have held, however, that being similarly situated does not require identical positions of the putative class members; instead, it requires that common questions predominate among the members of the class.  *Campbell*, 2010 WL 3326752, at *4; *Alvarez*, 605 F.3d at 449.

Mr. Babayemi and Mr. Adelanwa establish through their Declarations that they experienced the following when performing deliveries on behalf of NOW for clients other than Omnicare after February 2020:

- They were required to sign the Agreement when they began working as delivery drivers for NOW;

- They were classified as independent contractors under the Agreement;

- They were required to use their own personal vehicles to make deliveries;

- Mr. Babayemi would pick up products for deliveries for pharmacies at locations in Indianapolis;

- Mr. Adelanwa would travel all over Indiana to pick up products for various types of deliveries – typically medical deliveries;

- Mr. Babayemi and Mr. Adelanwa would pick up medical products and prescriptions from warehouses each day and deliver them via assigned routes to institutions such as nursing homes and assisted living facilities.  Mr. Babayemi often had to wait for the deliveries to be prepared and was not compensated for the time spent waiting;

16

- Mr. Babayemi and Mr. Adelanwa were required to return to the warehouse at the end of each shift to drop off supplies, undelivered products, or returned products.  They were not compensated for the time spent returning products at the end of their shifts;

- Mr. Babayemi and Mr. Adelanwa also performed stat, or ad hoc, high priority deliveries that are required to be made in a specific amount of time;

- NOW dispatchers would assign deliveries to Mr. Babayemi and Mr. Adelanwa over the phone and in person, and would supervise delivery drivers as they came and went from the pharmacy warehouse;

- When Mr. Babayemi and Mr. Adelanwa arrived at a nursing home or other client to make a delivery, they would use a mobile application on their cell phones for nurses and residents to electronically sign to confirm the delivery;

- Mr. Babayemi "usually" worked about 70 hours per week, six days per week, and Mr. Adelanwa "almost always" worked over forty hours per week, seven days per week, but neither was ever paid for overtime;

- Mr. Babayemi would "often" drive more than 90 miles per day and Mr. Adelanwa would "often" drive hundreds of miles per day and sometimes more than 500 miles per day.  Both paid for their own gas and car insurance;

- NOW would deduct fees out of Mr. Babayemi's and Mr. Adelanwa's paychecks; and

- Mr. Babayemi was paid about $1,100 per week (before deductions) for driving about 500 miles per week and Mr. Adelanwa was paid about $1,200 per week (before deductions) for driving "thousands of miles per week."

[Filing No. 37-7; Filing No. 37-8.]

The Court acknowledges NOW's argument that none of the Plaintiffs are similarly situated because the Court would need to consider the economic realities of each class member's working relationship with NOW in order to determine whether they should be classified as employees, and that difficulties in calculating the number of hours each plaintiff worked and how they were paid would preclude making that determination on a class-wide basis.  [Filing No. 39 at 28-35.]  But NOW relies upon cases in which substantial discovery had taken place and, as a result, the courts

applied the more stringent intermediate level of scrutiny for collective action certification. *See Blakley v. Celadon Group, Inc.*, 2017 WL 6989080, at *4 (S.D. Ind. Oct. 18, 2017) ("While discovery may not be complete, given the discovery that has already been conducted on the certification issues, we shall conduct an intermediate level of scrutiny"); *Armstrong v. Wheels Assured Delivery Sys., Inc.*, 2016 WL 1270208, at *5 (S.D. Ind. Mar. 30, 2016) ("While discovery is certainly not completed, given the discovery that has already been conducted on the certification issues, an intermediate level of scrutiny is appropriate here*"); Scott v. NOW Courier, Inc.*, 2012 WL 1072751, at *7-8 (S.D. Ind. Mar. 29, 2012) ("At this in-between stage, which is where the parties find themselves in the case before us, when substantial discovery has been conducted but is not yet complete, an intermediate level of scrutiny is appropriately applied by the Court…. We believe an intermediate level of scrutiny is indeed appropriate here.").

The Court is mindful of the directive that it should not resolve the merits of Plaintiffs' claims, including factual disputes and credibility issues, at the notice stage of the proceedings. *Barrett v. NorthShore Univ. Healthsystem*, 2019 WL 4412726, at *4 (N.D. Ill. Sept. 16, 2019). NOW's arguments regarding dissimilarities among the class would require the Court to delve into the merits of Plaintiffs' claims, and are more appropriately decided at step two, or the decertification stage. *See Millings v. Transdev Servs., Inc.*, 2023 WL 6541318, at *8 (N.D. Ill. Oct. 6, 2023) (differences among class members, including which ones qualify as non-exempt, "is an issue that is more appropriate to raise at step two, when the Court reevaluates the collective, not at step one."). The Court considers Plaintiffs' two FLSA claims – failure to pay minimum wages and failure to pay overtime wages – and whether Mr. Babayemi and Mr. Adelanwa have made the modest showing that they are similarly situated to the individuals they seek to represent for each claim.

a.      Failure to Pay Minimum Wages

Plaintiffs' claim for failure to pay minimum wages is based on their allegation that NOW made certain deductions from their paychecks and that NOW did not reimburse them for gas, insurance, or the use of their own car.  [*See* Filing No. 18 at 9-10; Filing No. 37 at 14-15.]

Mr. Babayemi states in his Declaration that he "usually would work about 70 hours a week" and that he was paid "about $1,100 a week." [Filing No. 37-7 at 4.]  This amounts to approximately $15.71 per hour.  Mr. Adelanwa states in his Declaration that he "was almost always working over 40 hours a week," and that he "made about $1200 a week." [Filing No. 37-8 at 3-4.]  This amounts to approximately $30.00 per hour.  Both Mr. Babayemi and Mr. Adelanwa were paid well above the federal minimum wage of $7.25 according to their own estimates of their pay and the hours that they worked.[7]

The Court acknowledges that Plaintiffs also claim that certain amounts were deducted from their paychecks and that they used their own vehicles, paid for their own gas, paid their own car insurance, and were not reimbursed for mileage.  While they provide the Internal Revenue Service mileage reimbursement rate range for the time period in which they worked, they do not suggest any method of calculating the amount they claim they should have been reimbursed, other than providing their rough estimates of how many miles they drove per week, how many hours they worked per week, and how much they were paid.  Further, they do not provide any specific amounts that they claim were deducted from their paychecks, or amounts they spent on gas or car

---

[7] Even if the Court were to consider the Declarations of Ms. Johnson, Mr. Kosile, and Mr. Ehinola, those individuals were also paid well above the federal minimum wage.  [*See* Filing 37-6 (Ms. Johnson worked about 60 hours per week and was paid approximately $500, for an hourly rate of approximately $8.33); Filing No. 37-9 (Mr. Kosile worked about 60 hours per week and was paid approximately $1,000, for an hourly rate of approximately $ 16.66); and Filing No. 37-10 (Mr. Ehinola worked about 70 hours a week and was paid about $850, for an hourly rate of approximately $12.14).]

insurance.  Instead, they simply state that "drivers will prove their minimum wage violations based on the same formula applying the IRS reimbursement rate to the miles that they drove for NOW, and then determining whether there has been a minimum wage violation in a given week," and that "[m]ore precise damage calculations will be accomplished after discovery."  [Filing No. 37 at 15-16.]  Even though the standard at the preliminary certification stage is low, there must be some proof of a viable claim in order to warrant collective treatment.  Promises of future proof will not suffice as they are completely speculative.  The Court reminds Plaintiffs that they chose to seek certification prior to meaningful discovery and apparently a consequence of that choice is a lack of evidence.

Accordingly, absent any evidence of the amount of paycheck deductions or expenses for which Plaintiffs were not reimbursed, Plaintiffs have not met even the minimal burden they have at the notice stage, and it is impossible for the Court to determine whether Plaintiffs are similarly situated to the class members who they seek to represent.[8]  Accordingly, the Court finds that Mr. Babayemi and Mr. Adelanwa have not shown that they are similarly situated to the individuals they seek to represent who, they allege, were not being paid the federal minimum wage.

_____

[8] Again, the Court is mindful that it should not make credibility determinations at the notice stage of the litigation.  However, it notes that it has grave concerns regarding whether the named Plaintiffs are similarly situated even to each other.  For example, Mr. Babayemi states in his Declaration that he drove about 500 miles per week and was paid about $1,100 per week.  Mr. Adelanwa states that he drove up to 500 miles per day, or up to 3,500 miles per week, and was paid about $1,200 per week.  The fact that Mr. Adelanwa only made $100 per week more than Mr. Babayemi but drove seven times as many miles is curious.  Additionally, NOW's records indicate that Mr. Adelanwa only worked for NOW for five weeks after February 28, 2020 and that during those weeks he made $520.14, $183.52, $395.21, $49.35, and $45.19, respectively.  [Filing No. 39-1 at 168.]  NOW's records paint a significantly different picture than that presented by Mr. Adelanwa in his Declaration, wherein he estimates that he made about $1,200 per week.  [Filing No. 37-8 at 4.]

b.      Failure to Pay Overtime

Both Mr. Babayemi and Mr. Adelanwa state that they worked more than 40 hours per week as NOW delivery drivers at least some point during the period from February 2020 to the present. [*See* Filing No. 37-7 at 2-4 (Mr. Babayemi stating that he worked for NOW from August 2019 to April 2021 and would "usually work about 70 hours a week"); Filing No. 37-8 at 2-3 (Mr. Adelanwa stating that he worked for NOW from March 2017 to 2020,[9] and he "was almost always working over 40 hours a week").] They also both state that they were never paid for overtime work. [Filing No. 37-7 at 4; Filing No. 37-8 at 3.] And, regardless of the various pay structures, it is undisputed at this juncture that no independent contractor-classified drivers were paid overtime if they worked more than 40 hours per week. Based on these statements, Mr. Babayemi and Mr. Adelanwa are similarly situated to other individual drivers classified as independent contractors who worked over 40 hours per week for NOW sometime after February 28, 2020 to the present and were not paid for overtime work.[10]

In sum, the Court finds that Mr. Babayemi and Mr. Adelanwa have not shown that they are similarly situated to individuals who can assert FLSA claims for failure to pay minimum wages, but that they have shown that they are similarly situated to individual drivers treated as independent contractors who worked over 40 hours per week for NOW and were not paid overtime wages.

---

[9] NOW's Executive Vice President, Ryan Jacobs, states in his Declaration that Mr. Adelanwa worked for NOW in 2020 for two months – October 2020 to November 2020. [Filing No. 39-1 at 7.]

[10] The Court again notes its concerns with Mr. Adelanwa's estimates in his Declaration. For example, it seems unlikely that Mr. Adelanwa worked over 40 hours during each of the five weeks he worked for NOW after February 28, 2020, given the pay that he received. [*See, e.g.*, Filing No. 39-1 at 168 (NOW's records indicating that Mr. Adelanwa was only paid $45.19 the week of November 16, 2020).] The Court also notes that it is making no finding on the merits of Plaintiffs' claims.

3.      *Propriety of an Indiana-Wide Collective Action*

NOW argues that Plaintiffs have only offered evidence regarding delivery drivers based out of NOW's Indianapolis and South Bend facilities, and not out of its Fort Wayne, Merrillville, Evansville, Louisville, and Cincinnati facilities.  [Filing No. 39 at 37.]  Plaintiffs do not address this argument in their reply brief.  [*See* Filing No. 40.]

Both Mr. Babayemi and Mr. Adelanwa (and Mr. Kosile and Mr. Ehinola) were based out of NOW's Indianapolis facility.  [Filing No. 39-1 at 5.]  Ms. Johnson was based out of NOW's South Bend facility, [Filing No. 39-1 at 6], but the Court has already determined that her Declaration is not relevant to the certification analysis because she focuses solely on deliveries for Omnicare, which occurred outside of the limitations period.  Because Plaintiffs have only presented evidence related to delivery drivers based out of NOW's Indianapolis facility, the class definition will be limited accordingly.

In sum, based on the rulings above, and given the lower standard it is applying, the Court will conditionally certify the following collective:

> All individuals who worked for NOW Courier, Inc. out of its Indianapolis, Indiana facility, were classified as independent contractors, delivered pharmaceutical products at any time from February 28, 2020 to the present, worked over forty hours per week, and were not paid overtime.

### III.
### PROPRIETY OF PROPOSED NOTICE

Because the Court has found the class definition proposed by Plaintiffs to be overly broad, Plaintiffs' request that the Court issue the proposed Notice to the putative class is **DENIED**. However, the Court briefly discusses issues that NOW raises with Plaintiffs' proposed Notice in order to streamline the procedure going forward.

### A.      Plaintiffs' Request for Phone Numbers

NOW argues that Plaintiffs' request for phone numbers and to send notice via text messages is "excessive in light of their various other suggested mediums."  [Filing No. 39 at 39.]  Plaintiffs argue that dissemination of notice by mail, email, and text message "has become the norm in FLSA collective action litigation."  [Filing No. 40 at 17.]

Courts within the Seventh Circuit have approved the use of text messaging to provide notice of a collective action when the potential collective action members are transient, live in locations where there is not reliable mail service, and where text messaging was the primary means by which their former employer kept in touch with them.  *See, e.g.*, *Luna Vanegas v. Signet Builders, Inc.*, 2023 WL 4926237, at *10 (W.D. Wis. Aug. 2, 2023).  Plaintiffs have not provided evidence that any of those circumstances are present here.  Further, the Court finds that notice via text message is overly intrusive.  *See Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 994 (N.D. Ill. 2018) ("Absent some showing that U.S. mail and email notice will not reach prospective class members, the Court finds that [notice via text message] is unnecessary and overly intrusive.   In the Court's view, most people do not expect to receive unsolicited business communications via text message, particularly from a former employer.").  The Court finds that the request for phone numbers and to send text messages is inappropriate.

### B.      Reminder Notices

NOW argues that reminder notices – whether by mail, text, or email – would be "overly intrusive and risk the appearance of the Court's encouragement of individuals to join the suit." [Filing No. 39 at 39-40.]  Plaintiffs assert that reminder notices are necessary due to "the long hours and transitory nature of the collective action members' work."  [Filing No. 40 at 17.]

The Court finds that reminder notices, much like text messages, are intrusive and unnecessary, "absent some showing that U.S. mail and email notice will not reach prospective class members." *Cates v. Alliance Coal, LLC*, 2022 WL 4485477, at *3 (S.D. Ill. Sept. 27, 2022). Plaintiffs point to the "transitory nature of the collective action members' work," [Filing No. 40 at 17], but while their work may have required them to travel during each day making deliveries, there is no evidence that they did not return to their home base each night. In other words, there is no evidence that they moved residences to perform their work for NOW, potentially making notice difficult. Additionally, the Court finds that "reminder notices could be misinterpreted as the Court encouraging individuals to opt-in." *Id.* The Court finds that sending reminder notices – whether by mail, text, or email – is inappropriate.

### C.      90-Day Opt-In Period

NOW argues that Plaintiffs' proposed 90-day opt-in period is excessive and should be limited to 60 days. [Filing No. 39 at 40.] Plaintiffs counter that NOW "does not identify any harm that will arise from the ninety-day period," which courts "routinely approve." [Filing No. 40 at 17 (quotation and citation omitted).]

Given that the Court has found that reminder notices are inappropriate, it also finds that a longer opt-in period of 90 days is warranted. Courts have frequently approved a 90-day opt-in period. *See, e.g.*, *Watt v. Fox Restaurant Venture, LLC*, 2019 WL 698058, at *9 (C.D. Ill. Feb. 20, 2019); *Pfefferkorn v. PrimeSource Health Grp., LLC*, 2019 WL 354968, at *6 (N.D. Ill. Jan. 29, 2019). Further, NOW has not presented any substantive reason as to why the 90-day opt-in period is too long.

### D.      Proper Class Definition

NOW points out that Plaintiffs' proposed Notice does not reflect the proper class definition. The Court has limited Plaintiffs' proposed class definition in any event, and the notice should reflect the following collective:

> All individuals who worked for NOW Courier, Inc. out of its Indianapolis, Indiana facility, were classified as independent contractors, delivered pharmaceutical products at any time from February 28, 2020 to the present, worked over forty hours per week, and were not paid overtime.

### E.      References to Notice Being "Authorized" by the Court

NOW argues that Plaintiffs' proposed Notice states repeatedly in bold that the Notice is "authorized" by the Court, which gives the impression that the Court is endorsing the lawsuit. [Filing No. 39 at 41.]  Plaintiffs respond that the Notice clearly states that the case is at an early stage and that there has been no decision by the Court as to whether Plaintiffs' position or NOW's position is the correct one, so "there is no suggestion that the Court has 'endorsed' Plaintiffs' lawsuit." [Filing No. 40 at 18.]

The Court is mindful that the Notice should not create the impression that this lawsuit is endorsed by the Court.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.  To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.").  However, the Court also recognizes that the Notice makes clear that the Court has not made any rulings determining which party will succeed.  [*See* Filing No. 37-12 at 3 (proposed Notice stating "The case is at an early stage, and there has not been a decision by the court as to whether the Plaintiffs' position or NOW Courier's position is the correct one.").]  The Court finds it appropriate for the Notice to state once that it is Court authorized, but that there is no reason to include reference to Court authorization

three times in the two-page Notice – as the proposed Notice does.  Plaintiffs should delete two of the references to the Notice being authorized by the Court, but may leave one.

### F.    Legal Conclusions

NOW argues that the proposed Opt-In Consent Form attached to the Notice requires opt-in plaintiffs to make a legal conclusion by stating that they did not receive proper overtime pay, and also requires them to make factual allegations about hours worked and reimbursement.  [Filing No. 39 at 42.]  Plaintiffs respond that the Opt-In Consent Form does not require opt-in Plaintiffs to make a legal conclusion or make factual allegations, and that no changes to the Notice are needed.  [Filing No. 40 at 18.]

The two paragraphs in the proposed Opt-In Consent Form that are the subject of NOW's argument state, in relevant part:

> 3.      During that time, I worked more than forty hours per week during some or all of the weeks I worked, and I did not receive proper overtime pay, calculated as one-and-one-half times my regular rate.

> 4.      During that time, I also was not reimbursed for all work-related expenses. I understand that this lawsuit is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. asserting that I am or was an employee of NOW and seeking to obtain payment to me of overtime compensation for weeks in which I worked more than 40 hours and for minimum wage violations for all hours worked where I was paid less than the minimum wage to make deliveries for NOW.

[Filing No. 37-12 at 4.]  Given that the Court has limited the collective action notice to the overtime claim, the Opt-In Consent Form should not include the references to the FLSA minimum wage claim in paragraph 4.

As to paragraph 3, the Court finds the following statement, taken from the Opt-In Consent Form filed with the Complaint, sufficient and appropriate:  "During that time, I was not classified as an employee, I worked more than forty hours per week during some or all of the weeks I worked,

and I did not receive any overtime pay."  Plaintiffs must revise the proposed Opt-In Consent Form accordingly.

### G.      More Definite Statement of Requirements

NOW argues that the Notice provides that opt-in plaintiffs "may also be asked to be a witness or to provide evidence in the case," but that "not all individuals who submit a consent form will be required to do so."  [Filing No. 39 at 42 (quotation and citation omitted).]  NOW requests that the Notice include the following provision instead: "A class member may be subject to obligations such as responding to discovery, giving a deposition, and testifying at trial."  [Filing no. 39 at 42.]  Plaintiffs agree with NOW's proposed language.  [Filing No. 40 at 18.]  Plaintiffs shall revise the Notice accordingly.

### H.      Approval of Reminders

Finally, NOW argues that Plaintiffs only submitted their initial proposed Notice for Court approval, but that if the Court allows Plaintiffs to send reminders, the reminders must be submitted for Court approval as well.  [Filing No. 39 at 43.]  Plaintiffs do not address this argument.

Because the Court has found that reminder notices are inappropriate under the circumstances of this case, NOW's argument is moot.

### IV.
### CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Conditional Certification and to Authorize Notice Under the FLSA, [37], is **GRANTED IN PART** to the extent that the Court conditionally certifies the following collective:

> All individuals who worked for NOW Courier, Inc. out of its Indianapolis, Indiana facility, were classified as independent contractors, delivered pharmaceutical products at any time from February 28, 2020 to the present, worked over forty hours per week, and were not paid overtime.

The Court **DENIES IN PART** Plaintiffs' Motion for Conditional Certification and to Authorize Notice Under the FLSA, [37], in all other respects, including to the extent that it does not authorize the proposed Notice and Opt-In Consent Form submitted at Filing No. 37-12.

Plaintiffs shall file a revised proposed Notice and a proposed Opt-In Consent Form by **December 15, 2023**.  NOW shall file any objection thereto by **December 29, 2023**.  Any reply is due **January 8, 2024**.  Additionally, the parties shall meet and confer by **December 15, 2023** to address identifying information of the putative class members so that notice can be effectuated. The parties shall report to the Court if they cannot reach agreement about the scope of information to be exchanged.

Date: 11/28/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**