# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| OLUWAFEMI BABAYEMI, DAMLIARE EHINOLA, ABIOLA OLADEJI KOSILE, OLAWALE KEHINDE, SAMANTHA, JOHNSON and OLUWAFEMI ADELANWA on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NOW COURIER, INC. <br><br> Defendant. | CIVIL ACTION NO: 1:23-CV-00353-JMS-TAB |

# UNOPPOSED MOTION FOR APPROVAL OF
# FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT

**I.     INTRODUCTION**

Following extensive litigation and arm's-length negotiations, including a telephone mediation with Magistrate Judge Baker, Plaintiffs Oluwafemi Babayemi, Damiliare Ehinola, Abiola Oladeji Kosile, Samantha Johnson, Oluwafemi Adelanwa, and Abayomi Falaye ("Plaintiffs"), and Defendant NOW Courier, Inc. ("NOW" or "Defendant"), have entered into a Settlement Agreement that resolves the claims asserted in this matter. The proposed settlement agreement is submitted herewith as Exhibit 1.[1]

Because the instant lawsuit has been settled as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), judicial approval of the settlement is warranted. Plaintiffs seek one-step approval of this collective action settlement, consistent with the practices in this District. *See Knox v. Jones Grp.*, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) ("A one-step settlement approval process is appropriate.") (citing cases).

The proposed Settlement satisfies the criteria for approval of an FLSA collective action settlement, because it is a fair and reasonable resolution of a *bona fide* dispute reached by counsel with extensive experience in complex employment law cases, and the settlement was reached only after arm's-length negotiations. Plaintiffs therefore submit that approval is warranted.

**II.    PROCEDURAL BACKGROUND**

On February 28, 2023, Plaintiffs, through counsel, filed a class and collective action complaint on behalf of themselves and a collective of similarly situated individuals titled *Babayemi, et al., v. NOW Courier, Inc.*, No. 23-00353 (S.D. Ind.) (the "Lawsuit" or the "Action").

---

[1]     The version submitted as Exhibit 1 is the final version of the Agreement, and Plaintiffs' counsel is continuing to obtain signatures from the named Plaintiffs. The Parties will submit the fully executed version prior to the approval hearing.

On November 28, 2023, the Court granted in part Plaintiffs' motion for conditional certification and permitted FLSA notice to be issued to:

> "All individuals who worked for NOW Courier, Inc. out of its Indianapolis, Indiana facility, were classified as independent contractors, delivered pharmaceutical products at any time from February 28, 2020 to the present, worked over forty hours per week, and were not paid overtime."

ECF No. 49. With the Court's approval (ECF No. 58), the parties distributed notice of the Action to "individuals who worked for NOW Courier, Inc. out of its Indianapolis, Indiana facility, were classified as independent contractors, delivered pharmaceutical products at any time from February 28, 2020 to the present, and who allege that they worked over forty hours per week, and were not paid overtime." As a result of the FLSA notice, there are 57 total individuals pursuing their FLSA claims in this matter (51 opt-ins and six named Plaintiffs).  The Parties engaged in written discovery and agreed to attend a judicial settlement conference on September 3, 2024. Prior to the Settlement Conference, Defendant provided detailed data regarding the delivery jobs performed by collective members as well as their weekly pay.  Defendant also provided information regarding its earnings and financial liabilities.  At the judicial settlement conference, the Parties agreed to fully and finally resolve this matter on the terms and conditions described herein.

## III. THE TERMS OF THE SETTLEMENT

### A. Settlement Collective Members

Settlement Collective Members include Plaintiffs and all opt-in Plaintiffs who have joined this Action by filing a consent to join form.  This includes 57 individuals, all of whom are listed in Exhibit B to the Settlement Agreement.

### B. Calculation and Distribution of the Settlement Amount

The Gross Settlement Amount ("GSA") to be paid by Defendants is One Hundred Thirty

Thousand Dollars and Zero Cents ($130,000.00). Agreement ¶ 11(g). The GSA includes: (i) Seven thousand dollars total for Service Payments to each of the Named Plaintiffs for their broader release of claims in favor of Defendants, as well as their efforts in bringing and prosecuting this matter; and (ii) Plaintiffs' Counsel's attorneys' fees not to exceed thirty percent (30%) of the GSA ($39,000.00 total). *Id.* at ¶¶ 12(g), (i).

The Parties have carefully designed the distribution process in the best interests of the Settlement Collective Members. After subtracting the above amounts from the GSA, the balance ("Net Settlement Amount") shall be distributed to the Settlement Collective using the following objective formula: each Settlement Collective Member will receive a minimum payment of $50, plus their *pro rata* portion of the Net Settlement Amount for each workweek. *Id.* ¶¶ 12(i), 19.

Plaintiffs' counsel at Lichten & Liss-Riordan, PC will perform the necessary functions of the Settlement Administrator to effectuate the settlement. This will save many thousands of dollars in Collective Members' funds, which are often used to obtain the services of a third-party to perform notice mailing, to issue checks, and to undertake the necessary tax reporting.

Each Settlement Collective Member will receive a Notice of Settlement accompanying a check. By cashing the check, the Settlement Collective Member will be deemed to have released their claims per the Settlement. *See* Agreement at 23. Settlement Collective Members who do not deposit or cash their Settlement Award check will not release their claims nor be bound by the Settlement. Because the 57 collective members have already submitted opt-in forms, Plaintiffs' counsel already represents those individuals and has been communicating with them throughout the past year after receiving their consent forms; thus, the Parties do not anticipate that there will be any uncashed checks.

All Settlement Award checks shall remain negotiable for one-hundred eighty (180) days

and shall be accompanied by the Settlement Notice when they are sent. *Id.* ¶ 25. Plaintiffs' counsel shall make all reasonable efforts to follow-up with Collective Members to ensure that they received their settlement check and are able to deposit it during the Check-Cashing Period. *Id.* Any amounts from uncashed settlement checks after the 180-day period will be paid back to Defendant in recognition of the fact that those individuals who do not cash their settlement checks do not release any claims. *See id.*

### C. Release of Claims

The "Released Claims" are defined in the Agreement as:

> [A]ny and all Fair Labor Standards Act claims, and state, municipal, or local wage and hour claims that accrued to the Settlement Collective Members against the Released Parties at any time up to the date of approval of the settlement , including but not limited to claims under the FLSA, or any other federal, state or local wage and hour law, pertaining to the alleged failure to pay for all hours worked, claims for unpaid wages (including minimum wage or overtime compensation), claims based on or related to deductions from compensation, claims based on the alleged misclassification of Settlement Collective Members as independent contractors, and related claims for liquidated damages, interests, penalties, fees or costs, that were or could have been asserted in the Lawsuit based upon the facts alleged in the operative complaint. This includes all claims that were raised in the Action or that could have been raised in the Action.

*Id.* at ¶ 12(l).

All Settlement Collective Members will automatically receive a settlement award without having to file an additional claim form, and will not release any claims unless they cash or deposit their check. The Settlement Award checks will contain a limited endorsement on the back stating that by signing, depositing, and/or cashing the settlement check the Settlement Collective Member releases the Released Claims as follows:

> By depositing or cashing this check, I affirm that I have opted-into the case of *Babayemi, et al., v. NOW Courier, Inc.*, No. 23-00353 (S.D. Ind.) and affirm my release of NOW Courier, Inc. and all other Released Parties of my Released Claims as defined in the Settlement Agreement approved by the Court in the case.

4

*Id.* at ¶ 23.

### D. Plaintiffs' Counsel's Fees and Costs

Pursuant to the Agreement, Plaintiffs' Counsel seeks attorneys' fees not to exceed thirty percent of the Gross Settlement Amount ($39,000.00). Plaintiffs' counsel will not seek an additional award of costs, despite incurring costs in filing the complaint, obtaining pro hac vice admission, litigating the case, and administering the settlement. *Id.* ¶ 12(l), 22.

## IV. ARGUMENT

### A. The Settlement May Be Approved In A Single Step

Because the instant lawsuit has been settled as a collective action, judicial review is warranted. Where, as here, there are no Rule 23 class action claims at issue, plaintiffs seeking approval of an FLSA collection action settlement pursuant to 29 U.S.C. § 216(b) are not subject to the same requirements applicable to settlements under Rule 23. Specifically, as courts have noted, "[u]nlike class actions, which cannot be settled without notice to absent class members under Rule 23(e), a collective action may be settled without notice to absentee members." *Fischer*, 42 F.4th at 377 (citing McLaughlin on Class Actions § 2:16); *see also Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) ("Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions."). Consistent with this principle, courts within this District have frequently granted approval of FLSA settlements in a single step, as opposed to the preliminary and final approval process required by Rue 23. *See, e.g.*, *Knox*, 2017 WL 3834929, at *2. A one-step approval process is appropriate here.

### B. The Court has Already Conditionally Certified the Collective Pursuant to 29 U.S.C. § 216(b)

The FLSA allows workers to bring an action on an individual basis or a collective basis for himself or herself and in a representative capacity for "other employees similarly situated." 29 U.S.C. § 216(b). Here, the Settlement Collective Members had substantially similar job requirements in performing deliveries for NOW and were subject to a common practice, policy, or plan of being paid as "independent contractors," as opposed to employees. As a result of such practices, all Settlement Collective Members alleged that they have not been paid overtime compensation for hours worked over forty (40) during a single workweek. Based on these considerations, the Court granted conditional certification of the collective action on November 28, 2023.

### C. The Court Should Approve the Settlement Agreement

"A district court should approve an FLSA collective action settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties." *Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *1 (S.D. Ind. Aug. 31, 2017) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). The proposed Settlement meets this standard.

#### 1. The Settlement was the Result of Contested Litigation

The settlement has arisen after hotly contested litigation. Plaintiffs filed suit in 2023. Defendant moved to dismiss. Plaintiffs filed a motion for conditional certification, which was fully opposed. The Parties engaged in written discovery and, near the end of the discovery period, the Parties agreed to attend a judicial settlement conference.

#### 2. The Settlement Resolves a *Bona Fide* Dispute and is Fair and Reasonable

The second prong of the Court's settlement approval inquiry, whether the settlement is a fair and reasonable resolution of a *bona fide* dispute between the parties, is also satisfied. A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Lynn's Food*, 679 F.2d at 1355. "In essence, for a *bona fide* dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Ogunlana v. Atl. Diagnostic Lab'ys LLC*, No. 19-cv-1545, 2020 WL 1531846, at *3 (E.D. Pa. Mar. 31, 2020) (citation and quotation marks omitted). Relevant here, "a dispute concerning overtime pay owed to class members is precisely the type of dispute the FLSA is designed to address." *Id.* (citation and quotation marks omitted).

Here, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following: a) whether Plaintiffs and opt-in Plaintiffs were property classified as "employees" of Defendant under the economic realities test of the FLSA; b) the extent of any overtime hours worked by Plaintiffs and opt-in Plaintiffs; c) whether Plaintiffs could maintain collective action status of the case; and d) whether the Parties would potentially appeal the myriad legal or factual determinations, including collective action treatment, liability, and damages. Accordingly, a *bona fide* dispute exists.

To determine whether a settlement is "fair and reasonable," courts often analyze the following factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) if serious questions of law and fact existed that placed the ultimate outcome of the litigation in doubt; (3) whether the value of immediate settlement outweighs the mere possibility of future relief after protracted litigation; and (4) in the judgment of the parties, is the settlement is fair and reasonable. *Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *1 (S.D. Ind. Aug. 31,

7

2017). All of these considerations support settlement approval.

First, the settlement was fairly and honestly negotiated in good faith with the assistance of the Magistrate Judge at a telephonic settlement conference. The settlement negotiations were based on substantial data and information that was provided by Defendant prior to mediation, showing the dates that Plaintiffs worked and their weekly earnings, which permitted Plaintiffs' counsel to analyze the potential damages of the collective. Defendant also shared information regarding its financial viability, which informed Plaintiffs' counsel's conclusion that this settlement is a fair resolution given the risks that Defendant could not sustain a larger judgment or settlement.

Second, there were serious legal and factual disputes that placed the ultimate outcome in doubt. Plaintiffs contended that they were misclassified as independent contractors and that they were actually employees, but Defendant believed that it had appropriately classified all collective members as exempt non-employees under the FLSA. If Plaintiffs were unsuccessful on this central liability question, then they would not have recovered any damages. The Parties also disputed numerous factual issues regarding the Plaintiffs' work, including the number of hours worked, which would have directly affected any potential award of overtime damages under the FLSA.

Third, the value of an immediate settlement is substantial due to concerns regarding Defendant's financial ability to sustain a larger settlement or judgment.

Fourth, Plaintiffs believe that the settlement is fair and reasonable. The average settlement payment to collective members after the subtraction of attorney's fees and service payments is approximately $1,400. Prior to mediation, Plaintiffs' counsel estimated that the potential damages of the collective for unlawful wage deductions, minimum wage, and overtime were $482,000. The recovery of $130,000 is approximately 25% of this amount. This discount was driven in large part

by concerns about Defendant's financial condition. Nevertheless, this recovery is within the range of settlements that are often approved under the FLSA. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).

### D. The Service Payments to the Named Plaintiffs Are Fair and Reasonable

The Court should find that the proposed additional payments in exchange for a general release of claims to the Named Plaintiffs do not otherwise impact the fair and reasonable resolution of a *bona fide* dispute. It is particularly appropriate to compensate plaintiffs in this regard where, as here, they have actively assisted Plaintiffs' Counsel in their prosecution of the matter for the benefit of other workers, and where they are receiving the payment in exchange for providing a broader release of claims that could not otherwise be obtained in an FLSA action. *See generally Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017).

The six named Plaintiffs will receive the following proposed service payments:

- $1,500.00 to Plaintiff Oluwafemi Babayemi;
- $1,500.00 to Plaintiff Damiliare Ehinola;
- $1,000.00 to Plaintiff Abiola Oladeji Kosile;
- $1,000.00 to Plaintiff Samantha Johnson
- $1,000.00 to Plaintiff Oluwafemi Adelanwa; and
- $1,000.00 to Plaintiff Abayomi Falaye[2]

Agreement at ¶ 20. In exchange for these payments, the Named Plaintiffs are releasing a broader set of claims against Defendant, including all known and unknown claims, up to the date of the Agreement, in exchange for the payments. In addition, Plaintiffs took the significant risk of coming forward to represent the interests of their fellow employees. They worked with Plaintiffs' Counsel,

---

[2] Plaintiffs Babayemi and Ehinola are receiving $1,500 (as opposed to $1,000) in recognition for their additional time spent participating in the judicial settlement conference.

9

providing background information about their employment, about Defendant's policies and practices, and about the allegations. The payments do not otherwise impact the fairness and reasonableness of the settlement and are modest in comparison with awards in similar cases. *Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *3 (S.D. Ind. Aug. 31, 2017) (approving amounts of $7,500 to two named plaintiffs and $1,000 each to opt-in plaintiffs who were deposed) (collecting similar cases).

### E. The Request for Plaintiffs' Counsel's Fees Should Be Approved

Plaintiffs' Counsel's request for thirty percent of the Gross Settlement Amount for the contingency fee is also fair and reasonable. Courts consider an award of attorney's fees in an FLSA collective action under either the lodestar or "percentage of recovery" approach. *See Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (using common fund method in FLSA collective action settlement); *Knox v. Jones Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *4 (S.D. Ind. Aug. 31, 2017) (using lodestar method in FLSA collective action settlement). Here, Plaintiffs seek thirty percent of the common fund as attorney's fees, equivalent to $39,000.00. This amount is significantly less than counsel's actual lodestar. See Thomson Decl. (Ex. 2) at ¶ 15 (explaining that conservative lodestar exceeds $53,000). This amount fairly compensates counsel for the significant time that counsel spent drafting the pleadings, engaging in motion practice, serving discovery, assisting Plaintiffs in responding to discovery, and preparing for and attending mediation. Counsel estimates that they will spend an additional twenty hours administering the settlement and communicating with collective members regarding the settlement. Moreover, Plaintiff's counsel does not seek an additional award of costs from the settlement fund, despite incurring litigation costs for filing fees and *pro hac vice* fees, and despite that additional costs will be incurred administering the settlement.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion and enter an Order approving the Collective Action Settlement in this matter.

Dated: September 25, 2024

Respectfully Submitted,

Plaintiffs, individually and on behalf of all others similarly situated,

By their attorneys,

*/s/ Matthew Thomson*
Bradley Manewith, *pro hac vice*
Matthew Thomson, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel. (617) 994-5800
Email: bmanewith@llrlaw.com
           mthomson@llrlaw.com

Anastasia Pavich (SBN 25373-45)
PAVICH LAW GROUP P.C.
30 W. Monroe St. Suite 1310
Chicago, IL 60603
Tel. (312) 690-8400
Email: apavich@pavichlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2024, a true and correct copy of the foregoing document was served on all counsel of record electronically via CM/ECF.

*/s/ Matthew Thomson*
Matthew Thomson

11